UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARICELA ARREDONDO, *et al*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| VS. | § | CIVIL ACTION NO. L-05-191 |
| | § | |
| RICK FLORES, *et al*, | § | |
| | § | |
| *Defendants*. | § | |

## OPINION AND ORDER

Pending before the Court are Plaintiffs' Rule 72 Objection to United States Magistrate Judge Adriana Arce-Flores's Order Excluding Plaintiffs' Expert Adrian L. Young, [Dkt. No. 68], and Defendants' Objections to the Magistrate Judge's Order excluding the testimony of Defendants Sheriff Rick Flores's and Webb County's expert witness Margo Fraiser, [Dkt. No. 76].  For the reasons stated herein, the Court will ACCEPT the Magistrate Judge's dispositions in part, and REJECT them in part.

## I.    BACKGROUND

### A.    Relevant Facts

This case involves a suit filed pursuant to 42 U.S.C. § 1983 to recover damages and equitable relief for alleged violations of Plaintiffs' First Amendment rights of free speech and association by Defendants.  [Dkt. No. 110 ¶ 2].  Plaintiffs are fifty (50) former employees of the Webb County Sheriff's Department whose employment relationships with Webb County, Texas ended on December 31, 2004 by notice of termination delivered by Sheriff-elect Rick Flores. [*Id.*].  Defendants are Webb County Sheriff Rick Flores ("Flores") and Webb County, Texas. [*Id.*].  Plaintiffs contend that their employment with Webb County was terminated on December 31, 2004 because they supported Flores' opponent in the Webb County Democratic Party

primary election. [*Id.* ¶ 5(A)(i)]. Alternatively, Plaintiffs contend that their employment was terminated because they failed to support the Flores candidacy. [*Id.*]. The contested issues of fact relevant to the pending objections are whether Flores terminated each of the Plaintiffs because they (1) supported his electoral opponent; or (2) failed to support his candidacy. [*See id.* ¶ 7(A)].

### B. The Instant Objections

On December 27, 2006, Defendants filed a Motion to Exclude Plaintiffs' Experts Peter F. Farias ("Farias") and Adrian L. Young ("Young"). [Dkt. No. 63]. As to Farias, Defendants argued that his testimony should be excluded because of failure to comply with Fed. R. Civ. P. 26(a)(2)(B), [*id.* at 2], and alternatively, because his testimony would be unreliable, [*id.* at 3]. As to Young, Defendants argued that "[w]hether or not Defendants violated Plaintiffs' First Amendment rights is a question of law for Court, or on which the Court will instruct the jury, not a question for a 'legal expert.'" [*Id.* at 4]. Thus, they claim that Young's testimony should be excluded because his opinions would improperly usurp the role of the Court and jury. [*Id.*]. Alternative, they argued that Young's proposed testimony (1) "is nothing more than an attempt to make a jury finding in advance of the jury's deliberation" and not helpful to the jury, [*Id.* at 5]; (2) fails to "make a complete statement of all opinions to be expressed and the basis and reasons thereof" in violation of Fed. R. Civ. P. 26(a)(2)(B), [*id.* at 6]; and (3) is unreliable and improper under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993), because per his own admission, Young allegedly "does not have sufficient facts or data upon which to base his opinion," [*id.*].

On January 31, 2007, the Magistrate Judge (1) partially denied Defendants' motion as to Farias; (2) granted Plaintiffs' leave to supplement Farias's expert report; and (3) partially

Granted Defendants' motion as to Young, thereby excluding his testimony.  [Dkt. No. 67].  The Magistrate Court found that Young's testimony should be excluded because (1) it is the Court's role, not an expert's, to instruct the jury on the law the jurors are to apply; (2) the admission of expert testimony regarding legal interpretations would usurp the role of the Court; (3) such testimony would confuse the jury if the testimony differs from the Court's instructions; and (4) expert legal testimony will not assist the trier of fact by helping the jury to understand the evidence presented or to determine a fact in issue.  [*Id.* at 5].  Plaintiffs filed the instant motion challenging the Magistrate Court's ruling excluding Young's testimony pursuant to Federal Rule of Civil Procedure 72 on February 9, 2007.[1]  [Dkt. No. 68].

On January 29, 2007, Plaintiffs filed a Motion to Exclude Testimony of Defendants' Expert Margo Fraiser ("Fraiser").  [Dkt. No. 66].  Like Defendants, Plaintiffs argued that such testimony would usurp the role of the Court and jury, [*id.* ¶ 6-9], and is neither reliable nor helpful, [*id.* ¶ 10-11].  The Magistrate Judge granted Plaintiffs' motion on February 15, 2007, thereby excluding Fraiser's testimony.  [Dkt. No. 74].  Using the same reasoning as in the order excluding Plaintiffs' expert testimony, the Magistrate Judge ruled that Fraiser's testimony "falls squarely within the category of legal testimony which would usurp the role of the Court and would not assist the trier of fact in determining any factual issue."  [*Id.* at 2].  Defendants objected to the ruling on February 25, 2007.  [Dkt. No. 76].

## II.    LEGAL STANDARD FOR EXPERT WITNESSES

Federal Rule of Civil Procedure 72(b) states that a district court judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  A district court judge may reconsider any pretrial matter pending before the court that a magistrate

---

[1] Defendants did not contest the Magistrate Court's decision granting Plaintiffs leave to supplement Farias's report.  [*See id.*].

judge has ruled on "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(A).

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise."  Fed. R. Evid. 702.[2]  As a preliminary matter, the Court must determine whether the proffered witness is qualified to give the expert opinion he or she seeks to express.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156-57 (1999).  That is, the Court must evaluate "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case."  *Tanner v. Westbrook,* 174 F.3d 542, 548 (5th Cir. 1999) (quoting *Kumho*, 526 U.S. at 156); *see Daubert*, 509 U.S. at 589.  The Court must pre-screen the expert witness's proffered opinions to ensure that they comply with other requirements of Rule 702 of the Federal Rules of Evidence.  Expert testimony is admissible only (1) if it qualifies as scientific, technical or other specialized knowledge; and (2) if it will assist the trier of fact to understand the evidence or resolve a disputed factual issue.  *See United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (holding that to qualify as an expert, a witness must have sufficient knowledge or experience "to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth"); *see also Kumho Tire Co.*, 526 U.S. at 147; *Daubert*, 509 U.S. at 589; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). In other words, the testimony must be reliable and relevant.  *Pipitone*, 288 F.3d at 244-45; *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580-81 (5th Cir. 2001); *Tanner*, 174 F.3d at 547.

---

[2] Rule 702 of the Federal Rules of Evidence provides in full:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of evidence has the burden of showing its reliability by a preponderance of the evidence, but need not show that the findings and conclusions are actually correct. *Hicks*, 389 F.3d at 524-25; *Rodriguez*, 242 F.3d at 581; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). Additionally, the mere presence of unknown variables does not render an expert's opinion unhelpful to the jury; the witness can explain such unknowns or be made to account for these on cross-examination. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 58, 585 (5th Cir. 2003); *Daubert*, 509 U.S. at 596. The Court—consistent with its gatekeeping function under Federal Rule of Evidence 702—may use its discretion to determine whether the testimony is reliable. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 812 (2000) (upholding district court's exclusion of plaintiff's statistical expert in disparate impact case). Even if a witness is properly qualified to present opinions grounded in science or expertise, this does not qualify the expert to offer legal opinions. *Taylor Pipeline Constr. Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006) (citing *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001)). Allowing an expert to draw legal conclusions from evidence—such as what duties a party owes and whether those duties were breached—is typically not helpful to the jury, i.e., does not present a relevant opinion. *See id.* (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5th Cir. 1983)).

## III.   DISCUSSION

### A.   Young's Designated Testimony

#### 1.   *Young's Preliminary Expert Report*

Plaintiffs initially designated Young as an expert witness on December 8, 2006, [Dkt. No. 62], and subsequently in Plaintiffs' Amended Designation of Expert Witness List on March 1,

2007.  [Dkt. No. 81].  As stated in his Preliminary Expert Report Concerning First Amendment

Violations, Young was designated to testify as to the following:

- If the facts demonstrate that Flores terminated any or all of the fifty named Plaintiffs because they either supported the former incumbent Sheriff Juan Garza, or failed to support the Flores candidacy, then without question such Plaintiffs' constitutional rights of freedom of expression and political association under the First Amendment were violated.

- Federal constitutional law has been clearly established for many years that government employees, particularly the rank and file, cannot be discharged from their employment because of their party or other political affiliation.

- It is axiomatic that the statutory at-will doctrine in Texas, as applied to sheriffs, can under no guise override the constitutional protection offered all citizens, including government employees, to undertake political support or its expression in favor of or against any candidate for elective public office.

- Based on his experience defending civil rights cases, Young believes that any reasonable and prudent administrator or official (particularly a high ranking one such as the sheriff of a sizeable metropolitan county such as Webb County, Texas), would or should know, with certainty, that an employee's continued employment cannot be conditioned on that employee's political affiliation.

- The Texas at-will doctrine cannot be argued to trump First Amendment protection.

- There is nothing ambiguous or unclear about the long line of cases forbidding the conditioning of a public employee's employment on his or her political affiliation.  No reasonable and prudent law enforcement or other government official would claim that the Texas at-will doctrine impairs federal constitutional protections.

[Dkt. No. 63-4 at 2-3].

## 2.    *Defendants' Objections and Application*

Defendants moved to exclude Young's testimony on December 27, 2006.  [Dkt. No. 63].

They contend that Young's opinions are improper for expert testimony because: (1) the

disclosure is defective pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), [*id.* ¶ 10]; (2)

they will not assist the trier of fact, [*id.* ¶ 9]; (3) they improperly usurp the role of the Court and

jury, [*id.* ¶ 8]; and (4) his testimony is unreliable, [*id.* ¶ 11].

The Court will begin by analyzing whether Plaintiffs complied with the disclosure requirements of the Federal Rules of Civil Procedure.  Pursuant to the Rules, the disclosure of an expert witness must be accompanied by a written report prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B).  The report must contain the following:  (1) "a complete statement of all opinions the witness will express and the basis and reasons for them;" (2) the information that the witness considers in forming his or her opinions; (3) any exhibits to be used as a summary or support of the opinions; (4) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (5) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years; and (6) a statement of the expert's compensation for the study and testimony.  [*Id.*].  Defendants argue that Young failed to make a complete statement of all opinions to be expressed and the basis and reasons thereof given that he cannot make an evaluation of the case as it stands.  [Dkt. No. 63 ¶ 10].

Defendants are correct in pointing out that Young's report does not contain all of the information that Rule 26 requires.  Plaintiffs claim that in support of their disclosures, they served Defendants with the composite list of documents produced to date and upon which the experts' testimony would be based.  [Dkt. No. 64 ¶¶ 1, 2].  They claim that part of Young's designation includes his Preliminary Report dated December 8, 2006 and his curriculum vitae, which lists of all the publications that he has authored within the last ten years and "all other cases in which [Young] has testified as an expert at trial or by deposition within the last four years."  [*Id.* ¶¶ 3, 4].  Young's Preliminary Expert Report is a three-page document containing a summary of his legal education and experience, and an assertion that he has never previously testified as an expert.  As presented to the Court, Young's report does not include his curriculum

vitae with all of the information required by Rule 26.  The report also fails to mention whether Young will rely on any exhibits to support or summarize his opinions or the compensation that he will receive for the study and testimony.  Similarly, Plaintiffs have failed to provide a list of Young's publications within the past ten years, as well as a list of any other cases in which he has testified as an expert at trial or by deposition within the past four years.  In fact, Plaintiffs averment that Young's curriculum vitae includes a list of the cases in which he has testified as an expert, [Dkt. No. 64 ¶ 4], contradicts the statement in his preliminary report that he has not previously testified as an expert, [*see* Dkt. No. 63-4 at 2].  Furthermore, as Defendants point out, Young himself admits that "a complete evaluation of the first amendment issues in this case . . . cannot be made at present."  [I*d. See* Dkt. No. 70 at 4].

The deficiencies in Young's report make it difficult for the Court to evaluate whether this particular expert has sufficient knowledge to assist the jurors to decide the particular issues in this case.  Thus, because Young has provided neither a complete statement of all opinions to be expressed, nor a comprehensive disclosure of other information as required by Rule 26, the Court concludes that Young shall be excluded from this case as an expert.  *See Tanner,* 174 F.3d at 548 (quoting *Kumho,* 526 U.S. at 156); *Daubert,* 509 U.S. at 589.  Furthermore, because the Court finds that Young may not testify as a result of Plaintiffs' failure to abide by the rules, the Court will not reach Defendants' other arguments relating to the inadmissibility of Young's testimony.

### B. Fraiser's Designated Testimony

#### 1. *Fraiser's Expert Report*

Ms. Fraiser's testimony includes the following conclusions:

1) There is no evidence to indicate that Plaintiffs' rights under the First Amendment to the United States Constitution were violated by Defendants.

2) It is common practice, and objectively reasonable, for a Sheriff-elect to require current employees of the Sheriff's Office to which he/she has been elected to undergo a process to retain their positions and that some Sheriffs—as it appears Sheriff Garza did with a number of employees—require such a process to be followed even when the Sheriff is reelected and the employees are currently serving under the Sheriff.

3) Under the laws of Texas, the employment of all of the employees expires at the end of the term of office of the Sheriff under which they serve. Hence, the employment of all of the employees who served under Sheriff Garza expired on December 31, 2004.

4) Sheriff-elects use a number of different processes to determine which employees to retain. Some require employees to submit an application for employment or a letter of request to remain while others automatically review all of the employees of the current Sheriff. Once it is determined which employees of the previous administration are to be considered, some use an interview process, others use a screening committee, and some do the review by themselves. All are common practices and objectively reasonable methods. It appears from the documentation that Rick Flores, then Sheriff-elect, used a combination of the various methods which was objectively reasonable.

5) All of the employees of the Webb County Sheriff's Office were at-will employees and were not covered by any type of civil service process. Hence, all of the employees' terms expired at the end of Sheriff Garza's term and Rick Flores, then Sheriff-elect, was free, within the bounds of the United States Constitution, to retain or not retain any of them he so desired.

6) While it may be that some, or all, of the Plaintiffs were political supporters of Sheriff Juan Garza and/or not supporters of Rick Flores, there is no evidence or indication that their support of Sheriff Garza or lack of support of Rick Flores, was in consideration, much less the deciding factor, in determining whether they would be offered employment under Sheriff Flores.

7) After reviewing the affidavits filed by the Plaintiffs which are allegedly representative of all of the Plaintiffs, Fraiser has found no causal link between their support of Sheriff Garza and/or non support of Rick Flores and the decision to not retain them as employees of the Webb County Sheriff's Office.

8) The documentation clearly indicates that a number of the employees of the Webb County Sheriff's Office voiced support for Sheriff Garza and/or did not support Rick Flores. That is not unusual considering that they were employees at will and Sheriff Garza had required some, if not all, of them to reapply for their positions when he was reelected in 2000. A candidate for Sheriff against an incumbent, or a member of the administration endorsed by the incumbent, usually expects and finds that the

current employees will support the incumbent, or the member of the administration endorsed by the incumbent; particularly if they do not have civil service.

9)   The documentation indicates that while some, or all, of the Plaintiffs may have voiced support for Sheriff Garza and/or not supported Rick Flores, a large number of the employees who were retained by Sheriff Flores also voiced support for Sheriff Garza and/or did not support Rick Flores.  There is no evidence to indicate the voicing of support for Sheriff Garza and/or not supporting Rick Flores was a factor, much less the deciding factor, in determining which employees would be retained and which employees' terms would be allowed to expire.

10)   A reasonable Sheriff or Sheriff-elect is to notify the employees that they will not be retained before the Sheriff-elect takes office.  That way, there is no question that they are not being retained as opposed to being terminated by the new Sheriff.

11)   The common practice of Sheriff-elects is to notify the employees that they will not be retained before the Sheriff-elect takes office.  That way, there is no question that they are not being retained as opposed to being terminated by the new Sheriff.

12)   Often the Sheriff-elect will wait until a day or two days before he/she is to take office to notify the employees that are not going to be retained of the decision.  One of the reasons for this practice is to limit the amount of time for misdeeds by those employees.  This is particularly advisable if the new Sheriff had defeated an incumbent in a hotly contested election.  The decision by Rick Flores to notify the Plaintiffs that they would not be retained on December 30 and 31 of 2004 was objectively reasonable.

13)   The actions taken by Rick Flores were those that a reasonable Sheriff-elect, Sheriff, or administrator would have taken under the same or similar circumstances.

### 2.   *Plaintiffs' Objections and Application*

Plaintiffs argue that Fraiser's testimony would improperly usurp the role of the Court and jury and is neither reliable nor helpful to the trier of fact because it seeks to make a determination of Defendants' violation of Plaintiffs' First Amendment rights.  [Dkt. No. 66 ¶¶ 6-8].  The Court finds that Fraiser's testimony is inadmissible, but only in part.

Pursuant to Federal Rule of Evidence 704(a), opinion testimony otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.  Federal Rule of Evidence 702 permits the district court to admit expert testimony that will assist the trier

of fact to either understand the evidence or determine a fact in issue.  However, neither rule permits expert witnesses to offer conclusions of law.  *See C.P. Interests*, 238 F.3d at 697 (citing *Owen*, 698 F.2d at 240).

The advisory committee notes to Rule 704 indicate that a court may not allow a witness to make legal conclusions or ask questions that would merely allow the witness to tell the jury what result to reach.  *See Owen*, 698 F.2d at 240 (distinguishing "an ultimate issue" from "the ultimate issue" and stating that while the rules allow a witness to comment and issue an opinion on an ultimate issue, arriving at *the* ultimate issue treads on the area reserved for the jury).  As the advisory committee notes to Rule 704 indicate, the protections afforded by the other rules of evidence are far from void when the testimony being offered addresses the ultimate issue:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.  They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.  Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 Adv. Comm. Notes.  Thus, testimony offering nothing more than a legal conclusion—i.e, testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules.

Fraiser's testimony includes a number of legal conclusions that would in fact usurp the role of the Court and jury and that would not be reliable or helpful to the trier of fact.  These include the following opinions: there is no evidence to indicate that Defendants violated the Plaintiffs' rights under the First Amendment of the Constitution, [Dkt. No. 65-2 ¶ V(1)]; Flores

acted in conformity with the Constitution when choosing which employees to retain and which to let go because all of the Sheriff's Office employees were at-will employees and consequently not covered by any type of civil service process, [*id.* ¶ V(5)]; there is no evidence or indication that Plaintiffs' political affiliation and/or voicing of support of a particular candidate was neither a consideration nor the deciding factor in determining whether they would be offered employment by Defendants, [*id.* ¶ V(6) & (9)]; there is no causal link between Plaintiffs' support of Flores's political opponent and/or non support of Flores and the decision to not retain Plaintiffs as employees, [*id.* ¶ V(7)]; and the documentation clearly indicates that a number of the employees of the Webb County Sheriff's Office voiced support for Sheriff Garza and/or did not support Rick Flores, which is not unusual considering that they were at-will employees and Garza had required some of them to reapply for their positions when he was elected in 2000, [*id.* ¶ V(8)]. The job of a juror is to listen to all the evidence presented at trial and then decide the facts based on the evidence presented and the instructions given by the judge.  It is the role of the jury to determine whether there is sufficient evidence to warrant a particular conclusion.  The aforementioned opinions are not statements of fact, or pieces of evidence that would assist the jury.  Rather, they are legal conclusions and evaluations about the sufficiency of the evidence, things that belong not in the witness stand, but rather in the bench or jury box.  As such, because this portion of Fraiser's testimony is nothing more than an attempt to make a jury finding in advance of the jury's deliberation, the aforementioned statements are inadmissible.

   The rest of Fraiser's statements are relevant and would assist the trier of fact because she relies on her experience as a former Sheriff to explain the operations, hiring and firing process, and personnel issues associated with the operation of a Sheriff's Department.  The Court agrees with Defendants that such procedures and operations are not commonly known by the public in

general, and consequently not typically known to a lay juror.  Consequently, Fraiser's testimony will be admissible, but only in part.  The statements that shall be excluded are those encompassing legal opinions about the sufficiency of the evidence and legal conclusions, namely paragraphs 1, 5, 6, 7, 8, and 9 above.  All other statements are admissible.

## III.   CONCLUSION

For the reasons stated herein, the Court finds that the Magistrate Judge's orders excluding Plaintiffs' expert Young and Defendants' expert Fraiser were erroneous.  While this Court agrees with the Magistrate Court with regards to Young—that his testimony is inadmissible—this Court's findings are based on a different rationale.  With regards to Fraiser, rather than exclude her testimony as a whole, this Court finds that only part of her testimony shall be excluded. Accordingly, the Magistrate Court's orders, [Dkt. Nos. 67 & 74] are REJECTED.

It is therefore ORDERED that Plaintiffs' Expert Adrian L. Young shall be excluded from testifying due to Plaintiffs' failure to comply with Federal Rules of Civil Procedure 26.  It is further ORDERED that Fraiser may testify and provide opinions in this case insofar as they are limited to those statements in the following paragraphs reproduced above: 2, 3, 4, 10, 11, 12, and 13.  Fraiser cannot testify as to the statements in paragraphs 1, 5, 6, 7, 8, and 9 above.

IT IS SO ORDERED.

DONE this 7th day of July, 2008, in Laredo, Texas.


_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

To Insure Proper Notice, Each Party Who Receives This Order Shall Forward a Copy of it to Every Other Party And Affected Non-party Even Though They May Have Been Sent One by The Court.