UNITED STATES DISTRICT COURT                    O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARICELA ARREDONDO, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | **CIVIL ACTION NO. L-05-191** |
| | § | |
| **RICK FLORES**, *et al*, | § | |
| | § | |
| Defendants. | § | |

### OPINION AND ORDER

Pending before the Court is Defendant Sheriff Rick Flores and Webb County, Texas'

Motion and Notice of Motion for Summary Judgment. [Dkt. No. 123].[1]  Upon due consideration

of the pleadings, responsive filings, and the governing law, such motion for summary judgment

is hereby **GRANTED**.

## I.    INTRODUCTION

This case involves a claim filed pursuant to 42 U.S.C. § 1983 to recover damages and

other equitable relief for alleged violations of Plaintiffs' First Amendment rights to free speech

and association.  [Dkt. No. 110 at ¶ 2].  Plaintiffs are forty–six former employees of the Webb

County Sheriff's Department whose employment relationships with Webb County, Texas ended

on December 30 or 31, 2004 by notice of termination delivered by Sheriff–elect Rick Flores.[2]

[*Id.*].  Defendants are Webb County Sheriff Rick Flores ("Flores") and Webb County, Texas

("Webb County").   [*Id.*].   Plaintiffs argue that their employment with Webb County was

terminated on December 31, 2004 because they supported Flores' opponent in the Webb County

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.

[2] This suit originally involved fifty (50) former employees of the Webb County Sheriff's Department.  However, on August 22, 2008, the claims of Plaintiffs Jesus Dominguez, Carmen Maldonado, Jorge Moreno, and Ricardo Walker were dismissed with prejudice.  [Dkt. No. 153].

Democratic Party primary election.  [*Id.* at ¶ 5(A)(i)].  Alternatively, Plaintiffs allege they were terminated in retaliation for their failure to support Flores' candidacy.  [*Id.*].[3]

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

In March of 2004, Rick Flores campaigned for Sheriff of Webb County, Texas against the sixteen–year incumbent, Juan Garza ("Garza"), in Webb County's Democratic Primary election.  [Dkt. No. 128, Ex. AA: Rick Flores Aff.].  Leading up to the election, all Plaintiffs were employed under Garza's administration and allege that they openly and notoriously supported Flores' opponent.  [Dkt. No. 86 at ¶ 8].  Flores subsequently won the Democratic Primary.  [Dkt. No. 128, Ex. AA: Flores Aff.].  With no opponent in the general election, Flores then became the sheriff–elect of Webb County.  [*Id.*].

After his victory, Flores avers that he created a transition team and that the team met periodically in the months leading up to January 1, 2005 when he would take his oath of office.  [*Id.*].  Flores avers that the team was created to assist him with the formulation of policies and procedures for his new administration.  [*Id.*].  Flores also avers that Esteban Paez ("Paez"), who served as Captain of the Jail Division under Garza's administration, provided the transition team with recommendations as to offers of employment renewal.  [*Id.*].  According to Flores, he relied on the information provided by Paez at the meetings to make his hiring and firing decisions.  [*Id.*].

---

[3] The Fifth Circuit makes no pertinent distinction between retaliation based on a plaintiff's support for a defendant's opponent and plaintiff's failure to support the defendant.  *See Aucoin v. Haney* 306 F.3d 268, 271-276 (5th Cir. 2002) (analyzing qualified immunity claim where defendant district attorney wrote letter to plaintiff informing him of termination due to his failure to support his administration); *Murphy v. Butler*, 512 F. Supp. 2d 975 (S.D. Tex. 2007) (analyzing Plaintiffs' retaliation claims discussing Plaintiffs' support of other candidates and Plaintiffs' corresponding "failure to support" defendant employer's campaign); *Gillespie v. City of Macon, Miss.*, 485 F. Supp. 2d 722, 728 (S.D. Miss., 2007) (citing *Crabb v. Itawamba, Miss.*, 1:04-cv-138, 2005 WL 2648017, *3 (N.D. Miss. Oct. 17, 2005) (holding individual member of board of supervisors could be held liable for terminating plaintiff for "failing to support him in his campaign"); *Guedry v.Marino*, 164 F.R.D. 181 (E.D.La. 1995) (holding that joinder of claims was proper where all plaintiffs alleged violations of First Amendment rights, including "failure to support [sheriff] in his reelection bid.")

On December 30 and 31, 2004, prior to taking his oath of office, Flores delivered termination letters to ninety–six employees who served under Garza's administration.  [Dkt. No. 127, Ex. V: J.J. Gonzalez Aff.].   Upon receiving these letters, Plaintiffs learned that their employment relationships with Webb County, Texas had ended.  [Dkt. No. 110 at ¶ 2].  While Plaintiffs were not rehired, Flores allegedly rehired 171 of the employees who served under Garza's administration.  [Dkt. 127, Ex. V: J.J. Gonzalez Aff.].

On August 29, 2005, Plaintiffs filed suit against Flores and Webb County pursuant to 42 U.S.C. § 1983, contending that their First Amendment rights to free speech and association were violated.  [Dkt. No. 1].  Plaintiffs' filed their [Third] Amended Complaint on March 13, 2007, contending that Flores' act in terminating the employment of each Plaintiff because of each Plaintiff's support of Flores' electoral opponent, or alternatively because of Plaintiffs' failure to support his candidacy, subjected each Plaintiff to deprivation of right of free speech and association under the First Amendment.  [Dkt. No. 86 at ¶ 64].   Additionally, Plaintiffs contended that Flores and Defendant Webb County are joint and severally liable.  [*Id.*].

In Defendants' Third Amended Answer, Flores and Webb County claimed the following affirmative defenses [Dkt. No. 87; Dkt. No. 88]: (1) qualified immunity;[4] (2) failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983 in that Flores is not liable in his individual or official capacity; (3) failure to state a claim upon which relief can be granted against Defendant under 42 U.S.C. § 1983 because terminations of at–will employees do not constitute a violation of constitutional rights; (4) failure to state a claim upon which relief can be granted because "joint and several liability" is not available under 42 U.S.C. § 1983 as a matter of law; (5) failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983 because Webb County did not ratify a law enforcement policy of Flores.  [*Id.*].

---

[4] On September 24, 2008, the Court denied Flores' "Motion for Qualified Immunity."  [Dkt. No. 156].

On December 14, 2007, Defendants filed this motion for summary judgment.  [Dkt. No. 123].  Plaintiffs opposed such motion on January 3, 2008, and objected to evidence submitted in support of Defendants' motion.  [Dkt. No. 132].  On January 23, 2008, Defendants filed a reply to Plaintiffs' opposition and objected to evidence submitted in support of Plaintiffs' motion.  [Dkt. No. 135].  Thereafter, Plaintiffs filed a sur–reply to Flores' motion for summary judgment on February 9, 2008.  [Dkt. No. 140].

Flores contends he is entitled to summary judgment because Plaintiffs cannot raise a genuine material fact issue under the requirements of 42 U.S.C. § 1983.[5]  Thus, Flores contends "[t]here is no genuine issue of material fact that Plaintiffs have been deprived of a constitutionally protected right or that Plaintiffs were deprived of such a right by a person acting under color of state law, as a result of *any* conduct of Defendant Webb County or Flores, individually or in his capacity as the Sheriff of Webb County . . ."  [Dkt. No. 123 at ¶ 19].  Alternatively, Flores argues that he had "legitimate, non-discriminatory reasons not to rehire Plaintiffs."  [*Id.*].  Flores further contends that Plaintiffs have failed to show they have been deprived of a constitutionally protected right because they cannot raise a material issue as to the requirements under a First Amendment retaliation analysis.  [*Id.* at ¶ 20].

More specifically, Flores claims that Plaintiffs' summary judgment evidence fails to show that a discharge, demotion, refusal to hire, refusal to promote, or reprimand occurred and that Plaintiffs' summary judgment evidence, thus, fails to show that an adverse employment action occurred.  [Dkt. No. 123 ¶ 43].  Flores also specifically avers that six Plaintiffs were offered employment with Flores but declined such offers and that one Plaintiff accepted an offer

---

[5] Section 1983 of the Federal Civil Rights Act provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, [. . .], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  42 U.S.C. § 1983 (2006).

of employment.   [*Id*. at ¶ 44].   Furthermore, Flores avers that fourteen Plaintiffs voluntarily retired at the expiration of their terms under Garza.  [*Id*. at ¶ 51].[6]

Flores also contends that Plaintiffs' summary judgment evidence fails to show that the speech of four Plaintiffs involved a matter of public concern.   [*Id*. at ¶ 54].   Flores further contends that Plaintiffs' summary judgment evidence fails to show that Plaintiffs' interest in their political activity outweighs Flores' interest in maintaining "close working relationships" among sheriff department employees, given the nature of their occupation as jailers and deputies. [*Id*. at ¶ 58].   Additionally, Flores avers that five Plaintiffs held confidential and policymaking positions under Garza and therefore could not sustain a claim of First Amendment retaliation. [*Id*. at ¶ 60].

Flores further contends that all Plaintiffs' summary judgment evidence fails to show that Flores' failure to rehire them was due to their support of his political opponent or alternatively, that Plaintiffs' summary judgment evidence fails to show that Flores' failure to rehire them was due to their failure to support Rick Flores.  [Dkt. No. 123 at ¶ 24].  Further, Flores contends that no liability can be attributed to Webb County because in order for liability to attach to Webb County for ratification, liability first must be established on the part of Flores.   [*Id*. at ¶ 68]. Flores argues that because no genuine issue of material fact exists to show a violation of Plaintiffs' First Amendment rights, no liability can be attributed to Webb County.  [*Id*.].  Finally, Flores contends that Plaintiffs have failed to show that they were deprived of a constitutional right by a person acting under color of state law.  [*Id*. at ¶ 64].

---

[6] Specifically, Flores avers that the following Plaintiffs voluntarily retired at the expiration of their terms under Garza:  Leticia Davila, Mario Davila, Ascension Flores, Celerina Flores, Jaime R. Flores, Raymundo Garcia, Laura L. Garza, Alfredo Gomez, Juan Hernandez, Carmen Maldonado, Arturo Ortiz, Esteban Paez, Homero Rangel, and Samuel Rubio.

## III.     DISCUSSION

The Court begins its discussion by setting forth the summary judgment standard, and will thereafter proceed to address Flores' arguments in light of the pleadings, responsive filings, and governing law.

### A.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden. To satisfy its burden the moving party must inform the court of the basis for its motion and identify those portions of the record "which [the moving party] believe[s] demonstrate[s] the absence of a genuine issue of material fact" with respect to issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 327 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). The movant meets this initial burden by showing that "the evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 327). While a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the moving party need not negate the elements of the nonmovant's case. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Once a moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise

provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "The nonmovant's burden is not satisfied by 'some metaphysical doubt as to material facts,' conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or 'only a scintilla of evidence.'" *P. Borgades-Account B, L.P. v. Air Products, L.P.*, 369 F. Supp. 2d 860, 865 (E.D. Tex. 2004) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). There is no issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968). Also, if an adverse party completely fails to make a showing sufficient to establish an essential element of that party's case on which it will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.

The nonmovant's evidence is to be believed with all inferences drawn and all reasonable doubts resolved in its favor. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts[.]" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). Nevertheless, only reasonable inferences will be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Co. v. Image Tech, Servs., Inc.*, 504 U.S. 451, 469 n.14.

**B.      First Amendment Retaliation**

To prove a First Amendment retaliation claim, a public employee must satisfy the following requirements: (1) that he suffered an adverse employment decision; (2) that the speech involved a matter of public concern; (3) that the employee's interest in commenting on matters of public concern outweighs the defendant's interest in promoting efficiency, and; (4) that the speech motivated the adverse employment decision. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.), *cert. denied*, 528 U.S. 1022 (1999) (citations omitted); *see also Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

**1.      Whether an Adverse Employment Action Occurred**

Flores makes several assertions related to the adverse employment requirement.  [Dkt. No. 123].  Flores avers that Plaintiffs cannot show an adverse employment action because they served as at-will employees under Garza's administration, that he had no authority to make employment decisions when he delivered the termination letters, that five Plaintiffs were offered employment with Flores' administration and subsequently denied such offers, that other Plaintiffs voluntarily retired, and that Plaintiffs failed to ask for reemployment with Flores.

In order to establish a First Amendment violation, a public employee must show that he suffered an adverse employment action for exercising his right to free speech.  *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)).  The Fifth Circuit defines adverse employment actions as "discharges, demotions, refusals to hire, refusals to promote and reprimands."  *Id*. (citing *McCabe*, 12 F.3d at 1563); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).[7]

---

[7] The Fifth Circuit has not yet determined "whether the adverse employment standard articulated in *Burlington Northern & Santa Fe Railway Co. v. White* applies to First Amendment retaliation cases."  *See Blackwell v. Laque*, 275 Fed. Appx. 363, 370 n.8 (5th Cir. 2008).  However, "there is no dispute that termination constitutes an adverse employment action under any potentially applicable standard."  *Id*.

While refusals to hire may constitute adverse employment actions, Texas Local Government Code § 85.003(c) provides that deputy sheriffs "serve at the pleasure of the sheriff." Tex. Loc. Gov't Code Ann § 85.003(c) (Vernon 2007).   Thus, a deputy's term ends automatically when the former sheriff's tenure expires.  *Brady v. Fort Bend County*, 145 F.3d 691, 697 (5th Cir.), *cert. denied*, 525 U.S. 1105 (1999)) (citations omitted).  Indeed, the First Amendment imposes no obligation on a new sheriff to consider ex-employees who do not seek reinstatement.  *Simmons v. Lyons*, 746 F.2d 265, 268 (5th Cir. 1984).  However, there are well–defined limits on a sheriff's discretion.  Notably, a sheriff "may not condition continuation of public employment on an employee's relinquishment of the First Amendment liberties of political belief and association."  *Barret v. Thomas*, 649 F.2d 1193, 1199–1200 (5th Cir. 1981) (citing *Perry v. Sinderman*, 408 U.S. 593, 597-598 (1972)).

Furthermore, whether a plaintiff has a vested right in his employment is irrelevant to a First Amendment challenge.  *Correa v. Fischer*, 982 F.2d 931, 936, n.3 (5th Cir. 1993).  For the purposes of determining whether First Amendment rights have been violated, the fact that a public employee was terminated by a failure to renew, rather than a dismissal, is irrelevant. *McBee v. Jimm Hogg County*, 730 F.2d 1009, 1015 (5th Cir. 1984) (en banc).  Even if a public employee has no "right" to a valuable government benefit and the government may deny the benefit for many reasons, the government may not deny the benefit on a basis that infringes on the employee's First Amendment rights.  *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 72 (1990).

 Here, Plaintiffs allege that Flores terminated them on December 30 and/or 31, 2004. Flores has admitted as much.  Although Plaintiffs served as at–will employees with no procedural right to reemployment, Plaintiffs had the right not to be terminated by Flores in

retaliation for conduct protected by the First Amendment.  Therefore, Flores' general claim that Plaintiffs did not suffer an adverse employment action is without merit.

Next, Flores argues that six specific Plaintiffs have failed to show they suffered an adverse employment decision because they received employment offers from Flores and rejected such offers.  [Dkt. No. 123 at ¶ 44].  Once a moving party has met its burden, the opposing party must, through affidavits or other competent evidence, set out "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56.  Where the opposing party completely fails to set out such facts, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322-23.  Flores' summary judgment evidence shows that Plaintiff Homero S. Rangel "was offered a job" in Flores' administration but failed to accept this offer.  [Dkt. No. 125, Ex. L: Benny Botello Aff.]. Flores' summary judgment evidence also shows that Flores's administration attempted to contact Plaintiff Francisco A. Fuentes and offer him employment.  [Dkt.  124, Ex. I: George Iruegas Aff.].  Plaintiff Fuentes failed to return such calls and when he responded in September, 2005, he was informed that the position had been filled.  [*Id.*].  Flores' summary judgment evidence also shows Plaintiff Maria de Lourdes Palacios was offered a full-time position as a jailer, was given a week to accept the position, and never accepted the offer.  [Dkt. No. 123, Ex. I: George Iruegas Aff.].

However, Flores fails to establish the time frame of these offers.  Flores provided the following testimony, insufficient to show when the alleged employment offers were made:  "I am aware that other members of my transition team offered jobs to some of these Plaintiffs but they, also, declined employment."  [Dkt. No. 123, Ex. AA: Rick Flores Aff.].  If such offers were made prior to the termination letters, and absent controverting–evidence from these Plaintiffs, summary judgment might be appropriate.  However, if the offers were made sometime after the

termination letters were sent, a fact issue would remain as to whether these Plaintiffs suffered an adverse employment action upon termination, regardless of subsequent offers.  Any subsequent offer might defeat liability or simply limit damages, but nonetheless in this context, a fact issue exists.

Flores' summary judgment evidence also shows that, at least by Fall 2004, Plaintiff Esteban Paez, Sr. was offered a position with Flores' administration."  [Dkt. No. 124, Ex. J: Albert Martinez, Aff.].  After being offered this position, members of Flores' administration asked Plaintiff Paez about alleged kickbacks from bondsmen, Plaintiff Paez allegedly responded by saying that he "did not care and did not want to be a part of us."  [*Id.*].  Such information was made known to Flores.  [Dkt. No. 128, Ex. AA: Rick Flores Aff.].  Plaintiff Paez fails to direct this court to an affidavit or other evidence to the contrary.  Therefore, summary judgment against Plaintiff Paez is **GRANTED**.

Moreover, Plaintiff Orlando Canizales provided evidence only that his "schedule, shift and days off" changed and expressed a subjective belief that Flores retaliated against him for supporting Garza.  [Dkt. 128, Ex. BB].  Even if the *Burlington* standard applies, a change in schedule, shift, and days off, in this setting, is insufficient to establish an adverse employment action.  Because Plaintiff Canizales failed to direct this court to any other evidence showing that he suffered an adverse employment action, summary judgment against him is **GRANTED**.

Flores' summary judgment evidence also shows that Plaintiff Mario Davila was offered a position at the Webb County jail under Flores' administration.  [Dkt. No. 123, Ex. B: Doyle Holdridge Dep.], [Dkt. No. 128, Ex. AA: Rick Flores Aff.].  Flores testified as follows regarding Plaintiff Davila:  "I know that Plaintiff Mario Davila was offered a job at the jail but he declined and I am aware that other members of my transition team offered jobs to some of these Plaintiffs

but they, also, declined employment." [Dkt. No. 128, Ex. AA].  Although this evidence shows Flores knew and was aware that Plaintiff Mario Davila was offered a position when he gave the affidavit testimony, the evidence fails to shows when the offer of employment was communicated to Plaintiff Davila, a timing issue that is critical as discussed above.  Moreover, Plaintiff Davila testified that he "was forced to retire under circumstances of constructive discharge." [Dkt. No. 128, Ex. Z].  The dispute demonstrated by such testimony presents a material issue for the fact finder.

Next, Flores argues that fourteen Plaintiffs cannot show they suffered an adverse employment action because they retired voluntarily and thus are unable to show that they suffered an adverse employment action.  [Dkt. No. 123 at ¶¶ 51–52].  In further support of this argument, Flores directs the Court to computer printouts indicating the dates on which the fourteen Plaintiffs allegedly retired.  [Dkt. No. 128, Ex. CC].  Rule 56 requires that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or secured with the affidavit."  Fed. R. Evid. 56(e)(1).  Here, the documents at issue are not even referred to in any affidavit and are clearly hearsay.  However, Plaintiffs fail to object to the documents as competent summary judgment evidence.  Notwithstanding Plaintiffs' failure to raise a hearsay objection as to the documents, the admissibility of such documents is irrelevant because the determination of whether the Plaintiffs retired voluntarily or as a result of receiving Flores' termination letters creates a fact issue.[8]

Similarly, Flores argues that the failure of Plaintiffs to show that they reapplied for employment prevents them from being able to claim that an adverse employment action occurred.  The Court here considers only whether Plaintiffs have raised a fact issue that they

---

[8] The Court notes that these documents appear to indicate that Plaintiff Jaime R. Flores retired on December 23, 2004, prior to Flores' termination letter.  However, without further explanation, summary judgment is improper.

suffered an adverse employment action. [9]   Flores' admission that he terminated Plaintiffs is sufficient to overcome that hurdle.

Finally, Flores argues that Plaintiffs cannot show that they suffered an adverse employment action because he had no authority to terminate Plaintiffs before taking his oath of office.  On December 30 or 31 of 2004, Flores delivered to Plaintiffs a letter providing notice that "effective January 1st, [sic] 2005, [their] services under [his] administration will not be required . . . Your cooperation in this matter is expected."  [Dkt. No. 129, Ex. FF].  Considering that this argument is necessarily related to the issue of whether Flores acted "under color of law," the Court will address this issue in its discussion of Flores' § 1983 argument below.  Suffice it to state, for the purposes of determining whether an adverse employment action occurred, Flores reaffirmed this letter when he failed to rehire Plaintiffs upon taking office.  As discussed below, Flores' judicial admission that he "terminated" Plaintiffs on December 30 or 31 is also dispositive on this issue.

In summary, Flores' motion for summary judgment is **GRANTED** against Plaintiffs Esteban Paez, Sr., and Orlando Canizales because they have failed to controvert Flores' evidence on this issue.  The claims of remaining Plaintiffs will be addressed below.

**2.      Whether Plaintiffs' Speech Involved a Matter of Public Concern**

To claim protection under the First Amendment, a public employee must further show that his speech or activity "related to a matter of public concern."  *Vojvodich v. Lopez*, 48 F.3d 879, 884-885 (5th Cir. 1995).  Whether such speech or activity relates to a matter of public

---

[9] Flores' application of *Simmons v. Lyons* is misguided.  746 F.2d 265 (5th Cir. 1984).  In *Simmons*, the plaintiff employees supported the defeated sheriff and sued the successor for his failure to reappoint them.  However, the plaintiffs failed to provide any affidavits contrary to the sheriff's averment that his employment decisions were not politically motivated.  Finding that no evidence showed the new sheriff's failure to reappoint the plaintiffs was not based on their political activities, the Fifth Circuit affirmed the district court's dismissal of the § 1983 claim.  Here, the issue of whether Flores' failure to reappoint Plaintiffs was based on their political activities is a fact issue yet to be determined by the fact finder.

concern is a legal question for the court to resolve.  *Terrell v. Univ. of Texas Sys. Police*, 792 F.2d 1360, 1362 n.2 (5th Cir. 1986), *cert. denied*, 479 U.S. 1064 (1987) (citations omitted).  As recognized by the Fifth Circuit, "[t]here can be no question that . . . campaigning for a political candidate . . .  relate[s] to a matter of public concern."  *Brady*, 145 F.3d at 707 (quoting *Vojvodich*, 48 F.3d at 885).

As noted above, Plaintiffs claim that they engaged in protected political speech-campaigning for Flores' opponent.  However, Plaintiffs have offered no competent summary judgment evidence in support of this claim.  Plaintiffs did attach certain discovery responses to their response, however, these are not sworn or authenticated in any form.  As such, they are inadmissible.  *See Duplantis v. Shell Offshore Inc.*, 948 F.2d 187, 191 (5th Cir. 1991). Defendants do offer the affidavit of Albert Martinez, who averred that "[d]uring Sheriff Juan Garza's re–election campaign, his employees were required to report and assist at his campaign headquarters to support his re–election."  [Dkt. No. 124, Ex. J].  Flores also avers in this affidavit that he assumed that Garza's employees supported him in his re–election bid.  [Dkt. No. 128, Ex. AA:  Rick Flores Aff.].  However, even construing this evidence in the light most favorable to Plaintiffs, it is insufficient to raise a fact issue.  Simply put, this evidence does not support a claim that these Plaintiffs engaged in protected speech.  If such were the case, it would follow that Flores would terminate all Garza employees.  Therefore, summary judgment is **GRANTED** in favor of Defendants as to all Plaintiffs on this basis.

However, Flores also argues that four specific Plaintiffs did not engage in protected speech and offers evidence to this effect.  Upon review of the summary judgment evidence, the Court finds that summary judgment should be granted against Orlando Canizales, Celerina Flores, Jaime R. Flores, Jr., and Manuel F. Gaytan, Jr., because they have provided no competent

evidence raising an issue of fact that they campaigned for Garza.  [Dkt. No. 128, Ex. DD: Direct Witness Questions].

In reply to a discovery question asking Plaintiffs to list the ways they supported Flores' opponent in the Democratic Primary, Orlando Canizales, Celerina Flores, and Manuel F. Gaytan, Jr., merely alleged that they voted for Garza.  [*Id*.].  Responding to the same question, Jaime R. Flores, Jr. stated that he was unable to support Garza because he was in basic training with the National Guard during the time of the election.  [*Id*. at 6].  In response to a question asking Plaintiffs to list their involvement in the Garza campaign, Orlando Canizales and Manuel F. Gaytan, Jr. again stated only that they voted for Garza.  [*Id*. at 2, 8].  Also failing to provide any evidence of campaign support for Garza, Celerina Flores stated she was not involved in the campaign and that she was always working, [*id*. at 4], while Jaime R. Flores, Jr. failed altogether to provide a response to the question.  [*Id*. at 6].

Plaintiffs have wholly failed to offer any competent summary judgment evidence that they supported Garza.  Additionally, as to specifics Plaintiffs, the evidence establishes that they did nothing beyond voting, at the most.  Plaintiffs Orlando Canizales, Celerina Flores, Jaime R. Flores, Jr., and Manuel F. Gaytan, Jr. thus have failed to raise a genuine issue of fact that they campaigned for Garza openly and notoriously.  Notably, Plaintiffs fail even to address this issue in their response and sur-reply to Flores' motion for summary judgment.  Therefore, summary judgment against all Plaintiffs is **GRANTED**.

### 3.   Whether Plaintiffs' Interest in the Protected Speech Outweighed Flores' Interest in Employee Efficiency

Where the protected conduct relates to a matter of public concern, an employee's interest in "commenting upon matters of public concern" must outweigh the public employer's interest

'in promoting the efficiency of the public services it performs through its employees.'"  *Brady*, 145 F.3d at 704 (quoting *Pickering v. Bd of Educ.*, 391 U.S. 563, 568 (1968)).  However, where a public employee occupies a policymaking or confidential position, the "government's interests more easily outweigh the employee's (as a private citizen)."  *Brady*, 145 F.3d at 708 (quoting *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994 (5th Cir.), *cert. denied*, 504 U.S. 941 (1992)).

In determining whether an employee is in a policymaking position, "[t]he nature of the responsibilities is critical."  *Elrod v. Burns*, 427 U.S. 347, 367 (1976).  "Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well–defined objectives.  An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position.  In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementations of broad goals."  *Id.* at 367–68.

Here, Flores appears to suggest that the interest of sheriff department employees in maintaining a "close working relationship" and "harmony" among co–workers outweighs Plaintiffs' interest in expressing political support for a candidate.  [Dkt. 123 at ¶ 58].  In support of this contention, Flores offers the testimony of Esteban Paez, Sr., who stated that "good communication" among sheriff department members was important so that "the inmates see that you were working together so that they knew if anything happened we would reach together." [Dkt. No. 127, Ex. U: Esteban Paez, Sr., Aff.].  Paez further testified that it was important to have dependable, reliable employees.  [*Id.*]  While acknowledging Flores' interest in creating efficiency and harmony among sheriff employees in a jail, the Court finds that Paez's testimony

fails to show that such an interest outweighs the constitutional right of Plaintiffs to support a political candidate.

However, Flores also contends that five Plaintiffs held policy–making positions. [Dkt. No. 123, ¶ 60, Ex. A; Dkt. No. 124, Ex. J: Albert Martinez Aff.; Dkt. No. 125, Ex. K: Teodoro Garcia Aff.]. Specifically, Flores avers that Juan Hernandez served as Chief Administrator, and in this position was "second in command" and was "in a position of responsibility with respect to policy, advising administration and formulating plans for the Sheriff's Department." [Dkt. No. 123 at ¶ 60]. Next, Flores avers that Mario Davila served as Lieutenant of the Patrol Division, and was responsible for overseeing the Patrol Division, and was also a policymaker and advisor to Sheriff Garza's administration. [Id.]. Finally, Flores avers that Esteban Paez, Raymundo Garcia, and Samuel Rubio served as Captains, had supervisory authority over the Divisions where they served, and enjoyed policymaking and advisory duties. [Id.].

While the allegations outlined above are laid out in Defendants' Motion for Summary Judgment, the only evidence offered is the affidavits of Albert Martinez and Teodoro Garcia. [Dkt. No. 124, Ex. J: Albert Martinez Aff.; Dkt. No. 125, Ex. K: Teodoro Garcia Aff.]. Albert Martinez states only that "[he] can attest that Plaintiffs Samuel Rubio, Juan Hernandez, Esteban Paez, Raymundo Garcia and Mario Davila were all supervisors, policy makers and enjoyed a confidential relationship in the Juan Garza administration." [Dkt. No. 124, Ex. J: Albert Martinez Aff.]. Similarly, Teodoro Garcia states only that, due to his years under Sheriff Garza, "[he] had personal knowledge that Plaintiffs Juan Hernandez, Esteban Paez, Mario Davila and Raymundo Garcia were policy makers for Juan Garza and held a confidential status within Garza's administration." [Id., Ex. K: Teodoro Garcia Aff.]. Such testimony is conclusory and hardly telling of the duties the alleged policymakers held which would place them in a

confidential or advisory position. The testimony of Martinez and Garcia is vague, non-descriptive of the nature of responsibilities held by said Plaintiffs under Garza's administration, and, thus, insufficient to grant summary judgment on this issue.

**4.      Whether Plaintiffs' Speech Was a Motivating Factor in Flores' Decision to Deny their Employment Renewal**

Finally, to prevail on a First Amendment retaliation claim, a plaintiff must prove his speech was a substantial or motivating factor in the termination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (citation omitted); *Gerhart v. Hayes*, 217 F.3d 320, 321 (5th Cir., cert. denied 531 U.S. 1014 (2000)). Without evidence that the employer knew of the protected conduct, a plaintiff cannot show that the activity motivated the retaliatory behavior. *Beattie*, 254 F.3d at 604.

If the plaintiff meets this burden, the burden shifts to the defendant to show, by a preponderance of the evidence that he would have come to the same conclusion in the absence of the protected activity. *Id.* at 601 (citing *Mt. Healthy*, 429 U.S. at 287). Thus, even where a plaintiff's protected conduct is proven to be the motivating factor in his discharge, the defendant employer may escape liability by showing that he would have taken the same action in absence of the protected conduct. *Mt. Healthy*, 429 U.S. at 287.

In *Brady*, the Fifth Circuit concluded that the fact–finder properly considered statements made by the defendant sheriff that occurred before the election and after the sheriff took office. *Brady*, 145 F.3d at 713–714. The evidence showed that the defendant sheriff stated "some of [his political opponent's] supporters at the first of the year probably would no longer have a job at the sheriff's department." *Id.* Other evidence showed that "during the sheriff's election, [the defendant sheriff] expressed anger when certain officers applied for warrants because they were

campaigning for [his political opponent]." *Id*.  Other evidence showed that after the defendant sheriff took office, he stated that he had previously seen a supporter of his opponent putting up signs, that seeing this act angered him, and that he terminated the employee for this reason.  *Id*. In addition to other factors, the Fifth Circuit determined that the evidence outlined above was sufficient to uphold the jury's finding of causation.  *Id*.

### A.    Motivating Factor

Defendants also seek summary judgment claiming that there is no evidence that Plaintiffs' exercise of their First Amendment rights was a motivating factor in their termination. In order to raise a fact issue on causation, Plaintiffs attempt to rely on the affidavit and excerpts from the deposition of Rodolfo Rodriguez ("Rodriguez"), a Constable of Precinct 1 for Webb County, Texas.  However, Plaintiffs have not attached the affidavit of Rodolfo Rodriguez nor the deposition excerpts in their response to Defendants' motion for summary judgment.  Plaintiffs merely include the pertinent text of Rodriguez's affidavit and the deposition in their response [Dkt. No. 132], or sur–response.  [Dkt. No. 140].

Defendants have specifically objected to the Court's consideration of Rodolfo Rodriguez's, Lorena Canavati Villareal's, and George Castillo's deposition excerpts as restated in Plaintiffs' response and sur–response.  [Dkt. No. 135 at ¶ 12].  "Depositions offered as summary judgment evidence must be sworn or reasons provided explaining why affidavits are unavailable." *Evans v. Spila*, 1994 W.L. 16465067 (5th Cir. 1994) (citing Fed. R. Civ. P. 56(e) & (f)).  "Unsworn documents are not appropriate for summary judgment consideration." *Id*. (citations omitted).  Here, Plaintiffs do not even offer the actual depositions excerpts but rather, only restate (presumably) that deposition testimony in their response.  "In case after case, the federal courts have declared that if an opponent of a motion for summary judgment wishes the

district court to consider certain evidentiary materials in ruling on the motion, then she 'must' submit those materials along with her opposition to the motion, or at least before the ruling on the motion." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 172 (5th Cir.), *cert. denied*, 510 U.S. 859 (1993)), *abrogated on other grounds by*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (citations omitted).   Defendants' objection to the restated deposition excerpts of Rodolfo Rodriguez, Lorena Canavati Villareal, and George Castillo is sustained.

Further, Plaintiffs themselves specifically object to the court's consideration "of all papers on file in this case for Defendant' motion for summary judgment."  [Dkt. No. 132 at ¶ 9]. Plaintiffs further argue that "[t]he Court should consider only those matters specifically set out in Defendants' motion and Plaintiffs' response."  [*Id.*].   Therefore, since neither party offers the affidavit of Rodolfo Rodriguez, it is not properly before the Court in connection with this motion for summary judgment.

Nonetheless, certain excerpts from the deposition of Rodolfo Rodriguez are properly before the Court.  The Court has thoroughly reviewed these excerpts, [Dkt. No. 125, Ex. O: Rodolfo Rodriguez Dep.], and finds that Rodriguez's testimony does not raise an issue on causation.  Throughout these excerpts only one section specifically mentions Rick Flores.  [*Id.* at p. 110, line 2].  However, Rodriguez does not testify that Flores expressed a plan to fire all Garza supporters.  Although earlier Rodriguez does testify that "he specifically told [Rodriguez] that he had terminated them because of their support for his opponent," [*Id.* at p. 106], the "he" or "them" are not identified.

As noted above, Plaintiffs did not provide sworn, certified, or authenticated copies of Rodriguez's affidavit or deposition.  In the absence of any competent evidence that Plaintiffs'

political speech was a motivating factor in Flores' termination of Plaintiffs, summary judgment is **GRANTED** to Defendants as against all Plaintiffs.

### B.      Other Legitimate Reasons for Termination

While Plaintiffs have failed to show a material issue exists as to whether Flores denied their employment renewal in retaliation for support shown to Garza, Flores may also escape liability by showing an absence of material issue as to whether he would have denied Plaintiffs' reemployment for other legitimate reasons.  *Mt. Healthy*, 429 U.S. at 287; *Beattie*, 254 F.3d at 601.  Even if Plaintiffs' support for Garza was a motivating factor in his decision to deny them employment renewal, Flores asserts that there is no material issue that he had legitimate reasons to do so.  [Dkt. No. 123 at ¶38: Rick Flores Aff.].  Flores avers that "Esteban Paez was the motivating factor on which employees to keep and which to let go" because Paez was the only member of the transition team with information on the performance, reputation, honesty, integrity and work habits of each employee.  [Dkt. No. 128, Ex. AA: Rick Flores Aff.].

After winning the primary in March of 2004, Flores alleges that he formed a transition team to assist him in formulating policies and procedures for his new administration.  [*Id.*]. According to Flores, Esteban Paez and Rudy Molina, members of Sheriff Garza's administration, provided the transition team with information on the performance of Plaintiffs.  [*Id.*]  The transition team is alleged to have made employment recommendations based on this information. [*Id.*].

Flores has also provided evidence, beyond his own testimony, that Paez gave him information about Garza employees for the purposes of employment renewal.  Several witnesses testified that a transition team existed, that the team held meetings, and that Esteban Paez and Rudy Molina made recommendations as to who Flores should retain in his administration.  [Dkt.

No. 123, Ex. C: Doyle Holdridge Dep.; *Id*., Ex. D: Rodolfo Molina Dep.; *Id*., Ex. E: Anthony E. Winterroth Dep.; Dkt. No. 124, Ex. F: Clifford M. Black Dep.; *Id*., Ex. G: Cynthia Garcia Dep.; *Id*., Ex. H: Albert Long, Jr. Dep.; *Id*., Ex. I: George Iruegas Dep.; *Id*., Ex. J: Albert Martinez Aff.; Dkt. No. 125 Ex. K: Teodoro Garcia Aff.].

However, Defendants' own summary judgment evidence shows that Paez did not provide recommendations and other personnel information to the transition team.  During his deposition, Paez himself testified that he did not attend any meetings that dealt with personnel decisions, [Dkt. No. 127, Ex. U.: Esteban Paez Dep., 83:2–5], and that he did not know what Flores's transition team used to make personnel decisions.  [*Id*. at 83:21–25].  He further testified that he never participated and never gave any information to anyone about who he thought would be a good employee under Sheriff Rick Flores' administration.  [*Id*. at 84:17– 22].  Finally, Paez denied having any reason to recommend that other named Plaintiffs not be retained by the sheriff's department.  [*Id*. 87:23–113:16].[10]  In light of the factual dispute raised by Defendants' own evidence as to Paez's participation on the transition team, this Court finds that there is a material issue as to other legitimate reasons for termination.

Notwithstanding testimony related to Esteban Paez and the transition–team meetings, Flores directs this court to other evidence purported to show that Flores had legitimate reasons to terminate Plaintiffs.  While such evidence may be sufficient to support the terminations, Flores fails to offer any evidence as to when such evidence became known to him.  The timing of such knowledge is critical.  None of the listed reasons for termination would have been considered by Flores if he did not learn about them until after Plaintiffs were terminated.

---

[10] Acknowledging this denial, Flores argues that Paez's assistance to the transition team is also proven through the testimony of other Plaintiffs.  However, such evidence cannot overcome the fact that Paez denies giving personnel information to Flores' transition team, therefore has also created a fact issue to be determined by the fact-finder.

While testifying in detail as to the personnel, purpose, and function of the transition team, Flores fails to show whether and when he learned the substantive employee information that allegedly prompted the recommendations.  [Dkt. No. 123, Ex. B: Rick Flores Dep.].  Flores testified that he participated in six or seven meetings, though not in all of them, and provides no evidence as to what he learned at these meetings.  [*Id*.].  Further, Flores testified that the transition team was "in charge of putting together the information on employee's professionalism, integrity, job performance, character, demeanor."  [*Id*.].  Although Flores averred that this information came to his attention "through the people that were doing the evaluation and the department[,]" he provided no evidence as to when such information came to his attention.  [*Id*.].  Furthermore, while members of the transition team testified that they made the discipline history of some Plaintiffs known to the transition team, their testimony fails to show when Flores received such information.

It is Defendants' burden to establish that other legitimate reasons existed for the terminations.  Defendants have failed to carry this burden.  However, because the Court has granted summary judgment on other grounds, the issue is moot.

## C.   Whether Flores Acted Under Color of State Law Pursuant to 42 U.S.C. § 1983

Although not dispositive to this motion, the Court nonetheless will consider whether Flores acted under color of law.  To proceed on a claim under 42 U.S.C. § 1983, a plaintiff must also demonstrate that he was deprived of a constitutional right by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1998) (citations omitted); *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).  Flores and Webb County contend that Flores did not act under color of law when he delivered the termination letters on December 30 or 31, 2004, because he did not have authority to fire Plaintiffs before taking his oath office.  [Dkt. No.

123 at ¶ 66].  In light of pertinent case law and Flores' factual admissions, the Court finds that Flores acted under color of state law upon taking office and reaffirming his intent to terminate Plaintiffs, as expressed in his termination letters that were delivered to Plaintiffs on December 30 or December 31, 2004.

The Fifth Circuit has previously upheld a judgment entered against a defendant county under § 1983, where the sheriff–elect delivered termination letters before taking his oath of office.  *Brady*, 145 F.3d at 697.  In *Brady*, the sheriff–elect, prior to taking his oath of office, "delivered letters to the [p]laintiffs stating that they would not be rehired on January 1, 1993." *Id*.  On January 1, 1993, the sheriff–elect officially occupied the office of sheriff, "reaffirmed his decision not to rehire the [p]laintiffs[,]" and signed letters stating as much.  *Id*.  The defendant county argued that the sheriff–elect "did not exercise final policymaking authority" when he delivered the letters indicating his intent not to rehire the plaintiffs before taking his oath of office.  *Id*. at 701.  In response, the Fifth Circuit held this argument lacked merit because "once [the sheriff–elect] assumed office, he reaffirmed his intention not to rehire the Plaintiffs and gave effect to that intent by not rehiring the Plaintiffs."  *Id*.

Here, similar to the sheriff–elect in *Brady*, Flores delivered letters to Plaintiffs before he took office and indicated that, effective January 1, 2005, their services under his administration would not be required.   [Dkt. No. 129, Ex. FF].  Upon assuming office, Flores gave effect to his communicated intent not to rehire Plaintiffs when he failed to rehire them.  While the evidence before the Court does not show that Flores delivered a subsequent letter to Plaintiffs upon taking office, as the sheriff–elect in *Brady* did, Flores' failure to rehire Plaintiffs nevertheless affirmed the intensions expressed in his termination letter.  Similar to the sheriff–elect in *Brady*, Flores became a state actor wielding policymaking authority after taking office.  By acting with such

authority when he gave effect to his personnel decisions upon taking office, the Court finds that Flores also acted under color of law.

Furthermore, Flores admitted that "all plaintiffs were terminated from their employment from the defendant Sheriff dated December 30 or 31, 2004."  [Dkt. No. 43 at ¶ 7; Dkt. No. 45 at ¶ 9].[11]  By admitting that Plaintiffs "were terminated from their employment from the defendant Sheriff[,]" Flores also conceded that he had the authority to give effect to the termination letter. Despite Flores' unsuccessful attempt to retract this admission, for failure to meet the pleading requirements of Rule 8(b)(5) of the Federal Rules of Civil Procedure, this admission remains binding.  In light of his admission, Flores' contention that he lacked authority to terminate Plaintiffs before taking his oath of office on January 1, 2004 is also without merit.

In summary, Flores reaffirmed his intent not to rehire Plaintiffs after taking office when he failed to rehire Plaintiffs, and has also provided the Court with an admission that he terminated Plaintiffs on December 30 or 31, 2004.  For the foregoing reasons, the Court finds that Flores acted under color of law as required under 42 U.S.C. § 1983.

## V.    Conclusion

In summary, Flores' motion for summary judgment is **GRANTED** against Plaintiffs Esteban Paez, Sr., and Orlando Canizales because they have failed to provide evidence showing they suffered an adverse employment action as detailed above.

Plaintiffs Orlando Canizales, Celerina Flores, Jaime R. Flores, Jr., and Manuel F. Gaytan, Jr. have failed to raise a genuine issue of fact that they campaigned for Garza openly and

---

[11] As explained in the Court's Opinion and Order ruling on Flores' Motion for Qualified Immunity, [Dkt. No. 156], in response to Plaintiffs' Third Amended Complaint, Flores attempted to retract his earlier admission ("Defendant neither admits nor denies the allegation in sentence one of Paragraph 9 of Plaintiffs' 3rd Amendment Complaint"), but failed to meet the pleading requirements of Rule 8(b)(5) of the Federal Rules of Civil Procedure. Thus, the earlier admission is binding.  *See Martinez v. Bally's Lousiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).

notoriously.   Therefore, summary judgment against these four plaintiffs on this issue is also **GRANTED**.

Finally, because Plaintiffs have failed to raise an issue of protected speech and causation, summary judgment is **GRANTED** against all Plaintiffs.

IT IS SO ORDERED.

SIGNED this 30th day of September, 2008.


_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**